FILED
UNITED STATES DISTRICT COURT U.S. DIST COURT
MIDDLE DIST. OF LA

MIDDLE DISTRICT OF LOUISIANA 2007 NOV -7 ₽ 2: 29

UNITED STATES OF AMERICA

SIGN **DO NOT PUBLISH**
BY DEPUTY CLERK

VERSUS

CRIMINAL ACTION
NO. 07-157-A

GLEN AUBREY PITTS

## RULING ON MOTION TO DISMISS INDICTMENT

This matter is before the court on a motion by defendant, Glen Aubrey Pitts, to dismiss the indictment (doc. 14). Defendant filed a memorandum in support (doc. 17) and the government has filed an opposition to the motion (doc. 19). Defendant responded to the government's opposition (doc. 22) and the government has sur-responded (doc. 24). No oral argument is necessary and the matter is now submitted. Jurisdiction is based on 18 U.S.C. § 3231.

### THE WALSH ACT

The Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act") was signed into law on July 27, 2006. Title I of the Walsh Act is comprised of the Sex Offender Registration and Notification Act. Pub.L. 109-248, §§ 1-155. 120 Stat. 587, 590-611 (2006). The Sex Offender Registration and Notification Act establishes a national sex offender registry, the stated purpose of which is "[i]n order to protect the public from sex offenders and offenders against children . . . ." *See* 42 U.S.C. § 16901. The Act provides that every jurisdiction shall maintain a jurisdiction-wide registry conforming to specified requirements. *Id.* at 16912. Information from this

registry is to be made available on the internet in a manner that will permit the public to obtain relevant information for offenders within each jurisdiction, and each jurisdiction's website must be designed to allow it to integrate into and participate with the Attorney General's Dru Sjodin National Sex Offender Public Website. 42 U.S.C. §§ 16918, 16920.

Of primary concern in this case are the registry requirements for sex offenders and the penalties imposed for failure to comply with these requirements. The registry requirements are found in 42 U.S.C. § 16913, as follows:

> (a) In general
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.
> (b) Initial registration
> The sex offender shall initially register–
> > (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> > (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
> (c) Keeping the registration current
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section.
> > The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular

2

jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State Penalty for failure to comply
Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than one year for the failure of a sex offender to comply with the requirements of this title.

42 U.S.C. § 16913

The Walsh Act also creates new federal crimes for those persons who fail to register as sex offenders in compliance with 42 U.S.C. § 16913. Defendant is charged with violating 18 U.S.C. 2250(a), the pertinent provisions of which provide:

(a) In general– Whoever–
    (1) is required to register under the Sex Offender Registration and Notification Act;
    (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
    (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
shall be fined under this title or imprisoned not more than 10 years, or both.

On February 28, 2007, pursuant to 42 U.S.C. § 16913(d), the Attorney General issued an interim rule providing that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders

3

convicted of the offense for which registration is required prior to the enactment of the Act."  28 C.F.R. § 72.3 (2007).

## FACTS AND PROCEDURAL HISTORY

Defendant Glen Aubrey Pitts was originally convicted in Virginia, on May 21, 1992, of two counts of oral sodomy and two counts of indecent liberties with a minor under his control.  Pursuant to Virginia law, he was required upon his release to register as a sex offender with the Virginia State Police and re-register within 30 days of any change of address.  He registered on November 10, 1994 and last re-registered on October 13, 1998.  Pitts failed to verify or re-register in October of 1999 and on November 28, 2001, Prince William County, Virginia issued a warrant for his arrest for failure to register as a sex offender.

On November 1, 2006, Pitts was arrested in Baton Rouge and the government contents that he traveled from Virginia to Louisiana sometime between October 13, 1998, and February, 2001 (doc. 21, p. 3) .  As of the date of his arrest, he had not registered as a sex offender in Louisiana as required under Louisiana law.[1]  On July 19, 2007, Pitts was indicted by a federal grand jury for failing to register and update his registration in violation of 18 U.S.C. § 2250(a) (doc. 1).

On August 27, 2007, defendant filed the motion to dismiss the indictment.  In support of the motion, defendant contends that the Walsh Act does not apply to him

---

[1]La. R.S. 15:542(A) requires any adult residing in Louisiana who has been convicted of any sex offense to register with the state. The court assumes that Pitts was "residing in" Louisiana and thus required to register.

because the Act only provides for potential retroactive application of the initial registration requirement and does not criminalize a failure to register by individuals originally convicted in state courts.  Defendant also contends that the act, if applied to him, is unconstitutional because: 1) Congress lacked authority under the Commerce Clause to enact it; 2) it violates the Ex Post Facto Clause; 3) it is an impermissible attempt to exercise police power; 4) it violates the Due Process Clause of the Fifth Amendment; 5) it violates the Non-Delegation Doctrine; 6) it violates the Tenth Amendment; and 7) it violates the fundamental right to travel.

## DISCUSSION

### Whether the Walsh Act Applies to this Defendant

Pitts notes that his predicate conviction was under Virginia law and contends that 18 U.S.C. § 2250(a) does not apply to him because it does not address a conviction under state law.  A plain reading of the pertinent provisions of the statute, however, demonstrates that it applies to the defendant under the alleged facts.

Under the facts alleged by the government, defendant is required to register under the Sex Offender Registration And Notification Act, (quoted *infra*) because he has traveled in interstate commerce, and knowingly failed to register or update his registration as required.  Thus, the facts alleged conform to the three elements of the statute.

Pitts also argues that the act was intended only to have potential retroactive application regarding the initial registration requirement.    In support of this contention, defendant states that 42 U.S.C. § 16913(d) is the only portion of the act which refers to any potential retroactive application and points out that it is titled "[i]nitial registration of sex offenders unable to comply with subsection (b) of this section (doc 17, p. 26).

The text of 42 U.S.C. § 16913(d), however, provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

This subsection grants the Attorney General power to specify the retroactive applicability of the requirements of the entire subchapter – not just the initial registration requirements of Section 16913(b).  Thus, the Attorney General acted within the grant of authority when he stated that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act."  28 C.F.R. § 72.3.

The plain reading of the subsection is consistent with the statement of the Congress that "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators . . .

6

Congress in this chapter establishes a national system for the registration of those offenders." *Id.* at 16901.  Clearly at some point in time after his conviction in Virginia, Pitts traveled in interstate commerce to Louisiana.  Construing the statute to allow for a retroactive requirement of initial registration without requiring that the registration be kept current would defeat the purpose of the act and lead to absurd results.

**Commerce Clause Claims**

Defendant contends that the registration requirements of the Sex Offender Registration and Notification Act constitute an invalid exercise of power under the Commerce Clause because: 1) the registration requirements lack a jurisdictional element in that they apply to sex offenders whose criminal activities are purely intrastate and never travel in interstate commerce; 2) the act has no economic character; 3) the Sex Offender Registration and Notification Act contains no congressional findings that the regulated activity has a substantial effect on interstate commerce; and 4) the aggregate economic effect of local criminal activity cannot be used to justify an invocation of commerce clause power. (Doc. 17, pp. 12-17).

Defendant also contends that 18 U.S.C. § 2250 is invalid under Commerce Clause jurisprudence because: 1) it does not fall into any of the three broad categories of activities which the Congress may regulate pursuant to its Commerce Clause power; 2) the jurisdictional element of interstate travel is insufficient to

declare that the statute has an effect on interstate commerce because there is no nexus between the travel element and the defendant's failure to register; 3) no congressional findings support the conclusion that 18 U.S.C. § 2250 has an effect on interstate commerce; and 4) there is either no economic effect regulated by the statute or the potential aggregated effects are insufficient to sustain the statute. (*Id.* at 17-21).

The Commerce Clause grants the Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. It is followed by the Necessary and Proper Clause which grants the Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution . . . ." U.S. Const. art. I, § 8, cl. 18.

The Supreme Court has identified three categories of activity that Congress may regulate under its commerce power: 1) "the channels of interstate commerce"; 2) "the instrumentalities of interstate commerce or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and 3) "those activities having a substantial relation to interstate commerce." *U.S. v. Lopez*, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 189 (1995).

Congress stated that the Sex Offender Registration and Notification Act was created to protect the public by establishing a comprehensive national system for the registration of sex offenders. *Id.* at 16901. Congress enacted this legislation

8

pursuant to its power under the Commerce Clause to regulate persons or things in interstate commerce.  This invocation of authority is clear from the jurisdictional element found in 18 U.S.C. 2250(a)(2)(B) that limits prosecution to an offender who is convicted under state law, and "travels in interstate or foreign commerce, or enters or leaves or resides in Indian country."   As a result, the Walsh Act only applies directly to such a defendant if he is otherwise required to register under the Sex Offender Registration and Notification Act, and he then travels in interstate commerce.

Indirectly, the law does affect offenders who are convicted under state law and do not travel in interstate commerce because Congress included financial incentives for states to enact their own punitive statutes for those who fail to register.  *See* 42 U.S.C. § 16913(e), 42 U.S.C. § 16926.   This, however, supports the court's conclusion that the Walsh Act is a valid exercise of the Commerce Clause. Congress recognized that the limits of Commerce Clause authority would prevent the registration requirements of the Walsh Act from applying to those convicted under state law unless they also traveled in interstate commerce.  This, in turn would hamper the goal of creating a comprehensive national registry of sex offenders. The Congress thus found it necessary and proper to include incentives that would encourage the states to pass cooperative legislation.   As a result, the only registration requirements imposed on offenders who do not travel in interstate commerce are those required by state law.

9

For the foregoing reasons, the court finds that the Walsh Act is a valid exercise of congressional authority under the Commerce Clause.  Furthermore, because 18 U.S.C. § 2250(a) is a valid component of the Walsh Act under the Necessary and Proper Clause, it is not an impermissible attempt by the Congress to exercise police power as defendant contends (doc. 17, p. 10).

**Ex Post Facto Claims**

Defendant contends that the Walsh Act, as applied to him, is punitive and violates the Ex Post Facto Clause.  Specifically, he states that 18 U.S.C. 2250(a) "increases the punishment for failing to register from a misdemeanor to a felony which carries a 10 year statutory maximum," and it "criminalizes interstate travel prior to its enactment" (doc. 17, p. 30).

Article I, § 9 of the U.S. Constitution states that "[n]o Bill of Attainder or ex post facto Law shall be passed."  In this regard, the Supreme Court has stated, "Although the Latin phrase "*ex post facto*" literally encompasses any law passed 'after the fact' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them."  *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

In determining whether 18 U.S.C. 2250(a) is a penal statute that violates the Ex Post Facto Clause, the Supreme Court's recent decision in *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) is instructive.  The issue there was

10

whether an Alaska statute violated the Ex Post Facto Clause by imposing new registration requirements on previously convicted sex offenders. *Id.* The statute in question in *Smith v. Doe* involved retroactive registration and notification systems that very closely resemble those in the Walsh Act. *See id.* at 90-91.

The Supreme Court stated that the determinative question in *Smith v. Doe*, was "whether the legislature meant to establish "civil proceedings." *Id.* at 85 (*citing Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). "If the intention was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, the Court must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. *E.g.*, *Ibid.* Because the Court ordinarily defers to the legislature's stated intent, *ibid.*, only the clearest proof will suffice to override that intent and transform what has been denominated a civil remedy into a criminal penalty. *See e.g.*, ibid., pp 1146-1147." *Smith*, 538 U.S. at 85.

The Court determined that the Alaska Sex Offender Registration Act was nonpunitive and therefore, its retroactive application did not violate the ExPost Facto Clause. *Smith*, 538 U.S. at 85. In doing so, it applied a two part test to determine: 1) whether the legislature intended a civil, nonpunitive scheme; and 2) if so, whether the effects of the legislation were so punitive as to negate that intent. *Id.*

11

In finding that the legislature intended to establish a civil regulatory regime, the Court noted that the text of the Alaska statute identified the protection of the public from sex offenders as the law's primary interest and declared that "release of certain information about sex offenders to public agencies and the public would assist in protecting the public safety." *Smith*, 538 U.S. at 85. The court then noted that "[w]here a legislative restriction is an incident of the State's power to protect the public health and safety, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Id*. (citing *Flemming v. Nestor*, 363 U.S. 603, 616, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

In finding that the effects of that act did not negate the intent of the legislature to create a civil regulatory regime, the Court stated that "[b]ecause the Court ordinarily defers to the legislature's stated intent, only the clearest proof will suffice to override that intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 85. The Court then analyzed the effects of the statute by applying the seven factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), and found that the effects did not negate the legislature's intent to create a civil regulatory regime. *Smith*, 538 U.S. at 85.

The same analysis applied to the similar facts in the case at bar must produce the same result. As to the first prong of the test, the Congress clearly intended this to be a civil, nonpunitive, regulatory regime. Congress stated that intent in the text

12

of the statute by declaring that the Sex Offender Registration and Notification Act was established "[i]n order to protect the public from sex offenders and offenders against children." *See* 42 U.S.C. § 16901. Nothing in the Walsh Act suggests that this was intended to be anything else.

Therefore, the analysis progresses to the second prong of the test applied in *Smith v. Doe* – whether the effects of the act are so punitive in purpose or effect as to negate the intent of Congress and result in a violation of the Ex Post Facto Clause. Again, because of the marked similarities between the Alaskan statute and the Act at issue in the case at bar, the court concludes that the effects do not negate the intent of Congress. Like the Alaskan statute, the requirements of the Sex Offender Registration and Notification Act: 1) are new and not traditionally regarded as a punishment; 2) do not subject offenders to affirmative disability or restraint; 3) do not promote the traditional aims of punishment; 4) have a rational connection to a legitimate nonpunitive purpose; and 5) are not excessive with respect to the Act's purpose.

For the foregoing reasons, the court finds that the Walsh Act does not violate the Ex post Facto Clause.

## Due Process Clause Claims

The Fifth Amendment Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

13

Defendant contends that the fair notice requirements of the Due Process Clause of the Fifth Amendment do not permit application of this criminal statute in his case because: 1) compliance with the law is impossible due to the fact that no state has yet implemented the requirements of the Sex Offender Registration and Notification Act; and 2) he had no notice or knowledge of the federal reporting requirements because his predicate conviction occurred years before the Walsh Act was enacted (doc. 17, p. 41). Defendant also contends that the interim rule issued by the Attorney General violates the Administrative Procedures Act as it was promulgated without notice and comment (*Id.* at 35) and that the Sex Offender Registration and Notification Act violates the Fifth Amendment Due Process Clause by subjecting him to reporting requirements and by criminalizing his failure to report when he did not have to report under the law as it existed when he was convicted of his predicate crime.[2] (*Id.*).

As to the first contention, 42 U.S.C. § 16913 requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." Compliance does not require the offender to register in a jurisdiction that has

---

[2]The court has already determined that the reporting requirements and penalty for failure to report do not violate the Ex Post Facto Clause under the reasoning of the Supreme Court in *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Defendant now presents the same argument under the guise of a violation of due process. The court need not repeat the analysis because the reasoning and result is the same here as under the ex post facto analysis. Under the reasoning of *Smith*, the reporting requirements and penalty for failure to report are valid due to the fact that they are part of a civil, regulatory regime.

14

enacted legislation complying with the requirements of the Sex Offender Registration and Notification Act.  Under the facts alleged, defendant was required to register and keep the registration current in Virginia and Louisiana.   Both jurisdictions have maintained sex offender registries which predate the period during which defendant is alleged to have traveled in interstate commerce.[3]  Therefore, compliance with the registration requirements was not impossible.

Defendant's contention that he had no notice of the requirement is also unavailing.  Virginia state law required him to register as a sex offender and he did initially did so (doc. 19, Ex. 1-5).  Louisiana state law also required him to register when he moved into the state.  *See* La. R.S. 15L: 542.  Therefore, defendant had sufficient notice that failure to register and update registration was illegal.

Defendant's contention that due process was not followed in the issuance of the interim rule likewise fails.  He asserts that 42 U.S.C. § 16913(d) violates the non-delegation doctrine by authorizing the Attorney General to specify the retroactive application of the registration requirements (doc. 17, pp. 37-41).

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. Art. I, §1.  The Supreme Court, however, has recognized that Congress may obtain "assistance" from other

---

[3]The government alleges that defendant traveled in interstate commerce sometime between October 13, 1998 and February of 2001 (doc. 21).  Louisiana created a statewide registry in 1992 when it enacted La. R.S. 15: 540 and defendant is on file as having registered in Virginia prior to 1998 (doc. 19, Ex. 1-5).

branches "[s]o long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta v. U.S.*, 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (*quoting J.W. Hampton, Jr., & Co. V. U.S.*, 276 U.S. 394, 406, 48 S.Ct. 348, 72 L.Ed. 624 (1928).

In the present case, the Congress has made clear that the overriding purpose of the Sex Offender Registration and Notification Act is to establish a comprehensive national registry of sex offenders for the protection of the public. *See* 42 U.S. 16901. Furthermore, the only decision which the Attorney General was authorized to make involved the retroactive applicability of the registration requirements of the Act. The Attorney General, therefore, was provided with very limited authority and required to exercise that authority in conformity with an intelligible principle laid down by Congress. Congress did not abrogate its legislative authority in violation of the Constitution.

Defendant also contends that the Attorney General's interim rule violates the Administrative Procedures Act, 5 U.S.C. § 553, by virtue of its promulgation without notice and comment. (doc. 17, pp. 35-37). The notice and comment requirements of 5 U.S.C. 553, however, do not apply:

> when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are

impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b)(3)(B).

In compliance with 5 U.S.C. 553(b)(3)(B), the interim rule provides findings by

the Department of Justice, stating that:

> Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.  The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.
> It would accordingly be contrary to the public interest to adopt this rule with a prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

72 Fed. Reg. 8894, 8896-8897 (2007) (*quoting from* 42 U.S.C. § 16901).

Therefore, the requirements of the Administrative Procedures Act were met

in the issuance of the interim rule.

**Tenth Amendment Claim**

Defendant contends that the registration requirements of the Sex Offender Registration and Notification Act violate the Tenth Amendment by forcing state officials to run local registries to accept federally required sex offender registrations in light of the fact that no state has yet enacted legislation adopting the requirements of the Sex Offender Registration and Notification Act (doc. 17, pp. 43-44).

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.   In support of his contention that the Sex Offender Registration and Notification Act violates the Tenth Amendment, defendant cites *Printz v. U.S*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (where the court held that "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program") (doc. 17, p. 44).

The Sex Offender Registration and Notification Act, however, does not require states, or their officials, to do anything they do not already do under their own laws. Currently, all states have sex offender registries enacted under state law.  The Sex Offender Registration and Notification Act only requires that sex offenders register in those pre-existing state registries.   The defendant provides no support for his

18

contention that the Federal Government under this Act requires state officials to perform any obligation not already required of them under state law.

**Right to Travel Claim**

The right to travel is a fundamental right protected by the Constitution. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). While not expressly mentioned in the Constitution, it is derived from the Privileges and Immunities Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. *Id.* at 631. The right to travel protects a person's: 1) right to enter and leave another state; 2) right to be treated fairly when temporarily present in another state; and 3) right to be treated the same as other citizens of that state when moving there permanently. *See Saenz v. Roe*, 526 U.S. 489, 499, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1990). Mere burdens on a person's ability to travel from state to state, however, are not necessarily a violation of that person's constitutional right to travel. *Id.*

Defendant contends that the Sex Offender Registration and Notification Act and 18 U.S.C. 2250(a) violate his right to travel because unregistered sex offenders who exercise the right are subject to federal prosecution. Therefore, he is unconstitutionally disadvantaged as compared to offenders who already reside in another state to which he might wish to relocate (doc. 17, p. 45). Furthermore, he notes that relocation to another state might require an individual to register as a sex

offender under federal law whereas he would not be required to do so under the law of the state where he previously resided.   *Id.*

The Congress, however, enacted the Sex Offender Registration and Notification Act and 18 U.S.C. 2250(a) in order to protect the public from sex offenders and offenders against children.  *See* 42 U.S.C. § 16901.  Thus, the federal government has a compelling interest providing these registration requirements to enable law enforcement to prevent future sexual offenses.  That compelling interest is sufficient to override the burden placed on sex offenders who must register under the Sex Offender Registration and Notification Act and 18 U.S.C. 2250(a).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (doc. 14) is hereby **DENIED**.

Baton Rouge, Louisiana, November 7, 2007.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA